Good morning. I'm A.J. Cutchins for the appellant, LeVon Haney. May it please the court, I know the court's had a busy morning and I'll be brief. The only thing that's complicated about this case is its tortured procedural history. As you do this room, you just have to bear with it. It's clear that the appellant's habeas corpus petition was wrongly dismissed. It's undisputed that if Mr. Haney had been allowed to challenge that wrongful dismissal on appeal, the dismissal would have been reversed and his petition reinstated. And Mr. Haney would long since have had a ruling on the merits of his underlying federal constitutional claim. What is his underlying claim, by the way? His underlying claim is that he entered into a plea agreement with the state of California and the state did not give him the benefit of his bargain. But that time has passed, hasn't it? He's claiming he's entitled to a parole eligibility hearing. No, no. In 1995. He didn't get it in 1995. Yes. But he became eligible in 1998 and he has had hearing, at least one hearing since then. Yes, Your Honor. I'd like to briefly note that that issue was never briefed, although it's there. Even before we got the letter from the state, I was puzzled. So how is it this case isn't moot? It does go to mootness and mootness is jurisdictional. So it really doesn't matter with anybody to raise it. I don't I don't believe. So anyway, Judge Clifton, just ask your question. And I'll gladly answer it. Judge Clifton. What he what he was promised was was an eligibility hearing in 1995. The remedy that he seeks is not some eligible eligibility hearing at some time. But the remedy he sought and I'm looking at his habeas petition. Yes. And what he sought was the benefit. He bargained that he'd get he'd get the hearing. Well, his understanding of the benefit of his bargain is that barring bad behavior, he would be released in 95 or 96. Oh, I think that's a hard argument to make. Nobody seriously believe that parole led automatically to release. Now, there's no doubt that the wind changed and there was an expectation of some kind. At least parole was more frequently granted at the time in the early 80s that he did his plea than it was in the 90s. And the time actually came and the federal system did away with parole altogether. And that kind of reflected what was happening around the country with parole. But I don't think you can say that the bargain included a release date. The bargain included a parole eligibility date. And by now he is parole eligible. Well, first off, we don't know what the bargain included. If we look at Brown versus Poole, we see that various promises were made. Some of them that were clear and some of them that were based on what was said to to the that specific petitioner at the time of the plea. That's not before the court. And frankly, I don't know about it because the first this was raised was three days ago, in my experience. The fact, though, is that if he even assuming that all he was seeking was a 95 parole eligibility hearing and he had no expectation beyond that, the fact is that he would have been thousands of percent more likely to receive parole in 1995 than when his minimum eligibility in fact occurred in 1999 because nobody was paroled. Between 1999 and 2003, two people were paroled in the state of California out of tens of thousands who were eligible. That was not true in the 80s and it was still not true in the mid 90s. The conditions shifted and they shifted in ways that we can only speculate about what the difference would have been for Mr. Haney. But one thing that we can be clear on is that a parole hearing 16 years later or a parole hearing 21 years later was not the same thing as a parole hearing 12 years later, which is what he was promised. So the remedy you want is what? Release? Rescission. In Brown v. Poole, this Court laid out two possible remedies. One is that in that case, because it was clear that the petitioner had been promised release, barring ill behavior, she was entitled to release. The Court said, however, there is another possible remedy, which is rescission. I would submit that that would be the appropriate remedy in this case. Go back to square one. Let the state of California try him for the crime with which he was charged then. Judge Clifton, if I've satisfactorily answered your question, I'll move on. I hate to interrupt your thought, but if Judge Ware had heard ‑‑ had had a hearing, what would have been your argument to stay in court? If Judge Ware had had a hearing on the issue of mootness? No, well, on the viability of his claim. Well, I ‑‑ in all honesty, I can't fully answer that because ‑‑ You're claiming that you were denied due process because you didn't have a hearing. Well, what would you have said if you'd had a hearing? Claiming that we were denied due process. He was denied the benefit of his bargain because he didn't have an eligibility hearing in 1995. Why isn't that moot after he got his hearing? Because a hearing in 1999 was not the same thing as a hearing in 1995. What did you want, money damages for the ‑‑ No, no. We wanted ‑‑ he wants the opportunity to ‑‑ to replead to the crime with which he was charged. Well, you want to set aside the original conviction on the ground that it was obtained under false pretenses. Exactly, Your Honor. Thank you. Well, was that in your brief in the ‑‑ before Judge Ware? It wasn't raised before ‑‑ the issue wasn't raised. You raised it here. I didn't, Your Honor. The Attorney General did three days ago. Well, that mootness argument is there. We'll ask her some questions about that. Okay. But on your question, it should have been self‑evident that there was some ‑‑ there was a question of mootness. After the dates had passed and he finally got a hearing, or finally got a parole date, what did you want? What did he want? As I said, he wants ‑‑ He wanted to set aside his original guilt. Yes, Your Honor. He had a lawyer standing there when he pled guilty. The judge tried to talk him out of it, told him all the things he was giving up, and he still pled guilty. So what's wrong with that? Well, Your Honor, I don't know, because I haven't seen the transcript of what happened then. I don't know what was said by the prosecutor then. This Court appointed me to address a very narrow procedural issue, subsequently appointed ‑‑ expanded that appointment so that I ‑‑ to address two very narrow procedural issues. The ‑‑ what happened in 1982 is as much a mystery to me as it is to this Court. I can ‑‑ we can speculate. But if Brown v. Poole teaches us anything, it's that a lot of things might have happened in that courtroom. A lot of things might have been said between the defendant and his attorney. A lot of things might have been said by the prosecutor. I think that all of that is properly to be litigated before the district court. All I'm here for today is to ask for the opportunity to litigate that before the district court. I want to litigate the validity of his original guilty plea. Is that it? Yes, Your Honor. You've got about a minute and a half. Do you want to reserve it for rebuttal? I do. Hear from the statement. May it please the Court. Pam Critchfield with the Attorney General's Office for Respondent Eppley Wharton. Initially and significantly, we would submit that the real issue here is that Appellant's petition or his claim is moot at this point because he has in fact had two parole hearings, one in 1998 for a possible initial parole date of 99, which was denied. And then he actually had a subsequent parole hearing in August of 2003. What about his argument that a hearing so many years later is not the same? That argument is completely irrelevant to the fact that he wanted a parole eligibility. He never asked for anything more than parole eligibility after 12 1⁄2 years. And the fact that he's now had the two hearings would make that claim moot. It's been satisfied. What would be the remedy that he would go back? The remedy he wants is to vacate the original conviction. Right. But he only ever wanted a parole hearing after 12 1⁄2 years claiming. He wanted a timely parole hearing. He wanted a timely parole hearing. So there's a four-year difference between when he received that hearing in 98 for a 99 release date and the 95 date, which based on the halftime credits would have been. Can you cite or do you cite a case for the proposition that in this circumstance, in other words, you know, the delayed hearing, that it's moot? No, I don't have a case for that proposition. I have done some searches and found uncitable cases that would actually from a district, a couple of district court cases that talk about parole hearing request being moot after one has been given. It just seems logical and the common sense approach to it that he received what he wanted. Granted, it wasn't in 95, but the hearing's been held. Well, that parole hearing and whether it was timely and so on may be moot, but lurking in his pro se petition was a claim that his original guilty plea was made under false misunderstanding, and he blamed his own lawyer as well as the state's attorney of saying, well, you'll be eligible for a parole hearing in whatever. Twelve and a half years. Twelve and a half years. Now, he says otherwise I wouldn't have pled guilty. Now, that may be a Baron Munchhausen tale, but isn't that entitled to a hearing to have the district judge, a trial judge, decide the facts? But the remedy for it is a hearing. And he's still asking for that in this court. He's still asking to have it sent back and have the district judge have a hearing. Have a hearing on that. On the validity of his original guilty plea. So that's not moot because he's still in custody. But the underlying basis for claiming that the plea was involuntary or unknowing was that he was going to be entitled to halftime credits, which would allow him a parole eligibility hearing in 1995. It may be a nonsense argument, but doesn't it raise fact questions that have to be sorted out by a trial judge? Possibly. We would argue that the hearing that he's the two hearings that he has received at this point have. Neither hearing went to the validity of his guilty plea. No. But they were parole eligibility hearings, which is all he's ever asked for. All except for the purposes of today's argument, that that part of the case is moot because it's over and gone and can't be recalled. The question of the validity of his guilty plea is still lurking in the record here, in the excerpt of record on two or three pages. If you need to look at it. So I'm still not sure that his case doesn't still have one little heartbeat left in it that has to. That should be resolved. Go back to a trial court. There was a reference in a footnote in your brief that says halftime credits were not even available until 1983. Correct. This plea was in 1982. Correct. Was the halftime credit system known about in advance in 1982? Not that I'm aware of. So your suggestion is that just as a matter of law, the claim is preposterous and ought to be rejected? Correct. Yes. Yes. Because it wasn't an available option at the time he was sentenced in August, September of 1982. And that's why he signed the waiver on the third time credits a year later. I did have some trouble understanding that form. I understand lots of people are signing the form. Is there a calculation there? Is it the form that's dated 1993 that's attached to his petition? Yes. I actually had a hard time understanding that as well. Looks like I may have misplaced it, but there you go. It shows a calculation, and it does appear to show some kind of adjustment of eligibility date. The form is unclear to me, so I may be discerning something that's not there. But they talk about a recalculated date. Right. Donna E.? Yes. I wonder, would they be doing that, would they be recalculating if at the time that he entered his plea, there wasn't this halftime credit system in place to begin with? What would be the recalculation? Right. You mean if it had never been a possibility that he received the halftime credits? I understood your argument correctly. The halftime credit system didn't exist when he entered his plea. Correct. And then he signed the waiver, so he became eligible for those in 1983, and he received those until 87, I believe. They were taken back once it was determined that it didn't apply. But everything he had at that point he kept based on an equitable estoppel period. So that's what this recalculation is about. If there are no further questions, I'd submit. Thank you, Ms. Critchfield. Mr. Butler? Yes, two points. Judge Clifton, as to the State's footnote in its brief about the availability or not of halftime credits, again, that wasn't litigated, but I think it is beside the point. I will, as to both of these points, again, direct the Court back to its own decision in Brown v. Poole, where one of the things the State said there as it's saying here is, well, what was promised the defendant wasn't something that the State was empowered to give the defendant, to which the answer was it was promised to him, and the State has held to its promises regardless of whether the specific prosecutor overstepped his bounds. The second point, and the central one, is that there is a world of difference between a parole hearing in 1995 and a parole hearing in 1998 for an eligibility of 99. Brown v. Poole teaches or reiterates that Your Honors are to look at this as any other contract that would be before the Court, and where a specific promise has been made, and that promise is impossible to fulfill. In other words, the State could not give him a 95 parole hearing after 95 passed, then the other remedy and the only remedy that's available is rescission. But he asked for, though. Pardon? In his petition, which was filed after 95, he doesn't ask simply for rescission. He asked for a parole eligibility. Well, he doesn't say that either. He says, if I recall correctly, that he wants what was promised him or in the alternative, rescission. That's correct. I think I read that somewhere. We don't know what was promised him. I mean, this was a pro per petition. My impression is that he felt that he was promised that he would be released on good behavior, just as Ms. Brown did in Brown v. Poole. Again, this is so far beyond anything that it was litigated below. In this case, it had been kicking around for seven years. The Attorney General just saw fit to raise either of these issues in, you know, virtually the last hours. So these matters were not litigated below. But my impression is that he thought he was getting out, and if that wasn't available, then he just wanted to call the whole thing off because he wasn't given the benefit of his bargain. If the Court has no further questions, I'll submit it. All right. Thank you. We thank both counsel. This case is submitted for decision, then. Next case on the argument calendar is Gavaldon v. Canberra.
judges: Goodwin, Tashima, Clifton